UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DECARLOS TITINGTON,               )
                                  )
            Petitioner,           )
                                  )      No.  3:22-cv-00955
      v.                          )
                                  )      Chief Judge Crenshaw
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )

**UNITED STATES' RESPONSE TO
MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255**

The United States respectfully submits this response to Petitioner DeCarlos Titington's

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Titington's motion

raises three claims for relief. As set forth below, the motion should be denied in full.

All three of Titington's claims are for ineffective assistance of counsel. His first claim is

that his trial counsel was ineffective for failing to object to the use at sentencing of the drug

quantity amounts found on the jury's special verdict form to determine his Offense Level for

purposes of the United States Sentencing Guidelines ("U.S.S.G"). This claim fails because it is

factually incorrect: Titington's trial counsel in fact *did* raise precisely that objection, both in written

objections to the Presentence Investigation Report and orally at sentencing.

It is true that Titington's co-defendant, Elance Lucas, raised a similar claim on direct appeal

and obtained a five-month reduction in his original 240-month sentence after a remand to this

Court for resentencing. It is also true that Titington's appellate counsel did not raise such a claim

on direct appeal. But Titington has forfeited any claim of ineffective assistance of *appellate*

counsel (as opposed to *trial* counsel) by failing to include it in his motion. And even if Titington

had included such a claim in his motion, it would fail on the merits because he cannot show that the special verdict issue was "clearly stronger" than the issues his appellate counsel actually raised on appeal. *See Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). The issues that Titington's appellate counsel raised were aimed at reducing his overall sentence by 50–60 months or more. By contrast, it was reasonable for appellate counsel to conclude that the special verdict issue would have had a negligible impact (or no impact at all) on Titington's sentence, even if it prevailed, in light of this Court's express statement at sentencing that Titington's sentence was based on the 18 U.S.C. § 3553(a) factors as a whole and so would have been the same even if his guidelines calculations were incorrect. The reasonableness of appellate counsel's judgment is further supported by the fact that co-defendant Lucas actually prevailed on this issue on direct appeal and received just a two percent reduction in his sentence as a result.

Titington's second claim is that his trial counsel was ineffective for failing to object to the application of U.S.S.G. § 2E1.2 to enhance his sentence. But because that provision of the guidelines was not, in fact, applied to Titington, this claim fails too.

Titington's third and final claim relates to the jury instructions at his trial. He contends that trial counsel was ineffective for failing to object to a Sixth Circuit pattern jury instruction, which provided in relevant part that "proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government also proved that he was a member of either conspiracy charged in the indictment." Titington contends that this instruction permitted the jury to convict based on proof of some other conspiracy not charged in the indictment. But his concern is unfounded. The jury instruction expressly *prohibited* the jury from convicting him unless the United States proved, as it did, that Titington "was a member of either conspiracy charged in the indictment."

For these reasons, and as more fully explained below, the United States respectfully submits that the Court should deny Titington's motion in full and further deny a certificate of appealability.

## I. BACKGROUND

### A. Offense Conduct

The Court is familiar with the facts and procedural history of this case and has set them out in detail in prior opinions. (*See, e.g.*, Crim. Doc. No. 1460, Memorandum Opinion.)[1] The Sixth Circuit has also summarized those details in *United States v. Lucas*, 2021 WL 4099241 (6th Cir. Sept. 9, 2021). In short, this case was a prosecution of members of the Gangster Disciples street and prison gang. The Gangster Disciples are a national gang founded in Chicago in the late 1960s. The gang organizes itself hierarchically, from a national board of directors down to so-called "regions," which are often named after the corresponding area codes and are led by a "regent." For example, the "615" region at issue in this case contains Clarksville, Nashville, and Murfreesboro, among other Middle Tennessee cities. Below the region is the "deck," which generally corresponds to a specific city within a region. The defendants in this case, including Titington, were members of the Clarksville deck of the Gangster Disciples. In *Lucas*, the Sixth Circuit thoroughly described the Clarksville deck's violent rise from the mid-2000's through the 2010's, including shootings, narcotics trafficking, and cold-blooded murders. 2021 WL 4099241, at *2–3.

Titington served in multiple positions of authority within the Clarksville Deck, including Chief of Security, Enforcer, and Block Coordinator of the Lincoln Holmes public housing development in Clarksville. (PSR ¶ 39). Trial testimony reflected that Titington kept firearms—

---

[1] The United States will refer to docket entries in this case, 3:22-cv-00955, with the citation form "Doc. No. __," and will refer to docket entries in the underlying criminal case, 3:17-cr-00124, with the citation form "Crim. Doc. No. __."

including AK-47s, shotguns, and handguns—as well as narcotics at his "trap spot" in Lincoln Homes. (*Id.* ¶ 50). And Titington used those firearms. In 2012, for instance, Titington called his fellow Gangster Disciple, Danyon Dowlen, and told him that two men were shooting at him in Lincoln Homes. (*Id.* ¶ 42). Titington instructed Dowlen to bring him his sawed-off AK-47 rifle. (*Id.*). When Dowlen arrived with the AK-47, Titington already had an AR-15 assault rifle as well. (*Id.*). Following a confrontation between Dowlen and the two men, Titington fired two shots and a shootout ensued. (*Id.*).

Another notable incident of violence about which the Government offered proof occurred on December 23, 2014, when Titington was involved in a physical altercation with two members of the rival Vice Lords gang at a convenience store in Clarksville. (*Id.* ¶ 41). The altercation began inside the store. After the two rival gang members ran out of the store, Titington followed them and fired a gun in the direction of the two fleeing men. (*Id.*).[2]

Titington was also a longtime drug dealer. At trial, Lawrence Mitchell testified that he purchased half a gram of cocaine from Titington on at least 50 occasions. (*Id.* ¶ 46). Dezorick Ford testified that he knew Titington to sell crack cocaine in Lincoln Homes between 2010 and 2011. (*Id.* ¶ 47). And Dowlen testified that he purchased cocaine from Titington at least twenty times, in amounts varying from one-half of a gram to an ounce, between 2011 and 2012. (*Id.* ¶ 49).

On February 15, 2015, Clarksville Police Department officers responded to a single vehicle accident and found Titington unconscious in the driver's seat. (*Id.* ¶ 52). Officers found a Glock

---

[2] Although the jury acquitted Titington of the counts arising from this incident (Counts Thirty-Five through Thirty-Nine, discussed further below), there is no doubt that Titington was involved in this violent altercation. The Court concluded at sentencing that Titington lacked a premeditated intent to kill but, regardless of Titington's precise state of mind, there is no doubt that he fired a gun at the fleeing rival gang members, as it was captured on surveillance video. (*See* Crim. Doc. No. 1675, Tr. of Titington Sentencing H'rg, PageID #21252–53).

4

model 19 firearm in plain view on the driver's side floorboard, powder cocaine on the passenger seat, and $743 in cash on Titington's person. (*Id.*).

### B. Charges and Trial

Titington was initially charged in this case by the Indictment filed on June 29, 2017. (Crim Doc. No. 1, Indictment). At Titington's arraignment, attorney David M. Hopkins was appointed to represent him. (Crim. Doc. No. 124, Minute Entry). On November 7, 2018, the operative Third Superseding Indictment was filed, charging 45 counts against Titington and eleven other members and associates of the Clarksville deck. (Crim. Doc. No. 831, Third Superseding Indictment). Titington was named in 11 of the 45 counts in the Third Superseding Indictment.

Titington, along with four of his co-defendants, proceeded to trial. After a two-month trial lasting from March 1 through April 29, 2019, the jury convicted Titington of six counts and acquitted him of five counts. (Crim. Doc. No. 1368, Verdict Form). Specifically, the jury convicted Titington of: RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count Two); two counts of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Counts Thirty-Four and Forty-One); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Forty); and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Forty-Two). (*Id.*). The jury also answered special verdict questions with respect to Counts One and Two. With respect to Count One, the jury unanimously found that it was "reasonably foreseeable" to Titington that the RICO conspiracy involved the distribution of, and possession with intent to distribute of, five kilograms or more of cocaine hydrochloride (powder cocaine) and 280 grams or more of cocaine base (crack cocaine). (*Id.* at PageID #10441). With

5

respect to Count Two, the jury unanimously found that it was "reasonably foreseeable" to Titington that the conspiracy charged in Count Two involved less than 500 grams of powder cocaine. (*Id.* at PageID #10442).

The jury acquitted Titington of five total counts, all of which were based on the convenience store shooting incident discussed above: two counts of attempted murder in aid of racketeering (Counts Thirty-Five and Thirty-Seven); two counts of assault with a dangerous weapon in aid of racketeering (Counts Thirty-Six and Thirty-Eight); and one count of brandishing, discharging, using, and carrying a firearm during and in relation to a crime of violence (Count Thirty-Nine). (*Id.* at PageID #10443–44).

### C. Sentencing

In the lead-up to the sentencing hearing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"). (*See* Nov. 11, 2019 PSR). To determine Titington's Offense Level with respect to Count One (the RICO conspiracy count), the PSR applied U.S.S.G. § 2E1.1. Under that provision, the base Offense Level for a RICO conspiracy is set "at the greater of 19 or 'the offense level applicable to the underlying racketeering activity.'" *Johnson v. United States*, 64 F.4th 715, 728 (6th Cir. 2023) (quoting § 2E1.1). The PSR thus set out to calculate the base Offense Level with respect to the various different types of underlying racketeering activity in this case.

As relevant here, with respect to the underlying racketeering activity of drug trafficking, the PSR calculated a base Offense Level of 30. (PSR at ¶ 67(m)).[3] The PSR did so by using the

---

[3] The PSR also calculated that, with respect to two other types of underlying racketeering activity—both attempted murders—a base Offense Level of 33 was appropriate. (PSR at ¶¶ 67(f), 67(*l*)). However, at the sentencing hearing, the Court rejected the PSR's recommendations with respect to the attempted murder base Offense Level, and so these recommendations did not ultimately affect Titington's advisory guidelines range. (Crim. Doc. No. 1675, Tr. of Titington Sentencing Hr'g, PageID #21242).

6

converted drug weight associated with the jury's special verdict findings that it was reasonably foreseeable to Titington that the RICO conspiracy involved five kilograms or more of powder cocaine and 280 grams or more of crack cocaine. (*Id.*).

On November 22, 2019, Titington's trial counsel, Mr. Hopkins, filed a document styled "Position of the Defendant DeCarlos Titington Regarding Presentence Report." (Crim Doc. No. 1546, Titington's PSR Position, PageID #13661). In this filing, Mr. Hopkins raised several objections to the PSR. His third objection was titled, in part, "Mr. Titington objects to the Base Offense Level of 30 in paragraph 67, subsection 'm)' on page 18 of the PSR calculated by attributing five kilograms or more of cocaine and 280 grams or more of crack cocaine to Mr. Titington." (*Id.* at PageID #13664). Under this heading, Mr. Hopkins argued as follows:

> The scope of the criminal activity jointly undertaken by the defendant ("the jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3(a)(1), commentary, applic. note 2. "[I]n order to hold a defendant accountable for the acts of others [under U.S.S.G. § 1B1.3(a)(1)(B)], a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." *United States v. Campbell*, 279 F.3d 392, 399-400 (6th Cir. 2002). The Commentary further instructs that "[i]n order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendants agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." U.S.S.G. § 1B1.3(a)(1), commentary, applic. note 2. "In order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. The fact that the defendant is aware of the scope of the overall operation is not enough to satisfy the first prong of the test and therefore, is not enough to hold him accountable for the activities of the whole operation." *Campbell*, 279 F.3d at 400.
>
> No evidence was presented regarding the specific amounts of cocaine or crack cocaine that Mr. Titington is alleged to have distributed, nor that he was aware of or agreed to any amounts allegedly distributed by others involved in this case. The PSR indicates that based on one witness' testimony, it estimated Mr. Titington sold 14.4225 grams . . . 20 times to arrive at the amount of 321.90 grams attributable to Mr. Titington. (PSR, p. 14, footnote 4). No definitive evidence

7

> regarding price for the alleged drug exchanges was given by this particular witness, from which this Court could infer these were not all simple possessions. Therefore, the base offense leve[l] of 30 . . . regarding underlying drug activity [was] improperly applied to Mr. Titington.

(*Id.* at PageID #13664–65 (some brackets in original)).

In addition to the fact that Mr. Hopkins raised this objection to the PSR in his filing, it was discussed orally at sentencing, too. On November 26, 2019, the Court held an omnibus hearing for Titington and three of his trial co-defendants to address the guidelines calculations for each of them. (Crim. Doc. No. 1679, Tr. of Nov. 26, 2019 Hr'g, PageID #21449–50). At this hearing, counsel for co-defendant Derrick Kilgore, Mr. Jack Byrd, orally raised this same objection regarding application of the jury's special verdict findings. (*Id.* at PageID #21517–18 (objecting to the base offense level of 30 because "Mr. Kilgore was a street-level drug dealer. He wasn't involved in these kilos of drugs coming back and forth. Didn't know about them. . . . [W]e believe that Mr. Kilgore should be held to the standard of what was reasonably foreseeable to him and he can be associated with.")). The Court also discussed this same special verdict issue at length with counsel for co-defendant Elance Lucas, Mr. Robert Parris. (*Id.* at PageID #21545–49 ("[T]he big question is, are you going to hold Mr. Lucas responsible for all of this – these other people's drug sales? . . . [T]he government hadn't proven more than 280 grams of crack cocaine. Yet the way the instructions or even if the way the law is written, . . . he can be held responsible for this massive amount of drugs with so little proof on him, that's difficult to swallow for me.")). Then, Mr. Hopkins raised this issue *again* on behalf of Mr. Titington. (*Id.* at PageID #21583–87 ("My next objection is – in paragraph 67. . . . The base offense level of 30 for attributing the 280 grams of crack cocaine to Mr. Titington. . . . You heard argument from previous counsel. I will adopt that, but just know that we object to that finding of attributing that weight and enhancing Mr. Titington's sentence based on those two amounts.")).

8

Finally, the Court noted this same special verdict argument yet again at Titington's individual sentencing hearing, held the next day on November 27, 2019. (Crim. Doc. No. 1675, Tr. of Titington Sentencing Hr'g, PageID #21243 (the Court noting and rejecting Titington's objection "based on paragraph 67 on the drug weight")).

At Titington's individual sentencing hearing, the Court calculated Titington's final Offense Level to be 30 based on the jury's special verdict findings with respect to the drug weights in the RICO conspiracy—*i.e.*, five kilograms or more of powder cocaine and 280 grams or more of crack cocaine.[4] (Crim. Doc. No. 1675, Tr. of Titington Sentencing Hr'g, PageID #21245). The Court then calculated that Titington was in Criminal History Category VI. (*Id.* at PageID #21246–47). Titington's Offense Level of 30 and Criminal History Category of VI yielded an advisory guidelines range of 168 to 210 months' imprisonment. (*Id.* at PageID # 21247). In addition, five consecutive years were added for the conviction under 18 U.S.C. § 924(c) (Count Forty-Two). (*Id.*).

After hearing argument from counsel and allocution from Titington, the Court pronounced its judgment and sentenced Titington to a top-of-the-guidelines term of 270 months' imprisonment, to be followed by five years of supervised release. (*Id.* at PageID #21279). In imposing this sentence, the Court emphasized Titington's "participation in and leadership in the Gangster Disciples group," and that Titington's criminal conduct covered the "holy trinity" of violence, drugs, and firearms. (*Id.* at PageID #21274–75). The Court also noted that Titington had been convicted of "repeated and persistent criminal activity that does require deterrence," and explained

---

[4] Because Titington's offenses of conviction grouped under the guidelines—with the exception of the § 924(c) conviction—and because the Offense Level of 30 based on the drug quantities found in the jury's special verdict was the highest Offense Level of the counts in the group, this Offense Level became Titington's final Offense Level used to calculate his advisory guidelines range. (*See* Crim. Doc. No. 1675, Tr. of Titington Sentencing Hr'g, PageID #21244–45; *see also* PSR ¶ 80).

that "the public ha[d] certainly been impacted through your activities and that of others, and . . . the seriousness of your offense is tied to the conspiracy convictions that all reflect . . . violent conduct." (*Id.* at PageID #21276–77). The Court also highlighted that it gave the Court "great comfort" that Titington would be "over the magic number of 65 [years old]" by the time he completed serving his terms of imprisonment and supervised release, and thus less likely to recidivate according to Sentencing Commission research. (*Id.* at PageID #21279). Finally, the Court made clear that its sentence was based on the § 3553(a) factors as a whole and "that if for some reason my guidelines calculation is wrong, then the Court would have imposed the same sentence, applying the 18 U.S.C. Section [] 3553(a) factors." (*Id.* at PageID #21281).

### *D. Direct Appeal*

Titington, along with his co-defendants at trial, appealed to the Sixth Circuit. On appeal, Titington was no longer represented by Mr. Hopkins, but was instead represented by Mr. Kenneth P. Tableman.

On May 11, 2020, Mr. Tableman submitted a 37-page appellate brief on behalf of Titington. (Exhibit A, Titington Appellate Brief). The brief raised five arguments.

*First*, the brief raised a sufficiency-of-the-evidence challenge to Titington's convictions on Count Forty (possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1)) and Count Forty-Two (possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)). (*Id.* at 12–20). On this point, Mr. Tableman argued that there was insufficient evidence presented at trial of Titington's intent to distribute the 7.66 grams of cocaine that was found in his car along with a firearm. (*Id.* at 16). Mr. Tableman highlighted that there was no packaging or scales found in the car, no testimony that 7.66 grams of cocaine was a distribution quantity, and no testimony that Titington had been selling drugs on the day in question. (*Id.*). This

argument was aimed at obtaining a judgment of acquittal on not only the § 841 conviction, *but also* on the § 924(c) conviction (which, Mr. Tableman argued, depended on the § 841 conviction as a predicate). And acquittal on the § 924(c) conviction would have reduced Titington's overall sentence by five years, because a conviction under § 924(c) carries a 60-month mandatory minimum sentence that must run consecutive to any other term of incarceration imposed.

*Second*, the appellate brief argued that there was also insufficient evidence to support Titington's conviction on Count One for conspiracy to distribute five kilograms or more of powder cocaine and 280 grams or more of crack cocaine. (*Id.* at 20–23).[5] The brief argued that there was insufficient evidence that Titington ever joined such a large-scale conspiracy and accordingly sought a judgment of acquittal on this count as well.

*Third*, the brief argued that the jury instructions were in error with respect to Count Two when they stated that the jury need not find that Titington knew what quantity of drugs the crime involved. (*Id.* at 24–30).

*Fourth*, the brief argued that Titington's sentence should be decreased by 52 months to account for time he had served on completed state sentences that were relevant conduct to the offenses of conviction. (*Id.* at 31–35).

*And fifth*, the brief argued that the guidelines' differing treatment of discharged and undischarged state prison sentences violates the Equal Protection Clause and the substantive Due Process Clause. (*Id.* at 35–36).[6]

---

[5] Although the brief labeled this argument as a challenge to Count Two, the Sixth Circuit construed it as a challenge to Count One. *Lucas*, 2021 WL 4099241, at *27 n.16.

[6] The brief acknowledged that this final argument was foreclosed by the Sixth Circuit's published decision in *United States v. Dunham*, 295 F.3d 605, 610 (6th Cir. 2002), but raised the issue "in order to preserve it for further review." (Exhibit A, Titington Appellate Brief at 37).

11

On September 9, 2021, the Sixth Circuit rejected Titington's appellate arguments and affirmed his convictions and sentence. *United States v. Lucas*, 2021 WL 4099241, at \*25–30 (6th Cir. 2021).

On October 11, 2021, Mr. Tableman filed a petition for a writ of certiorari on behalf of Mr. Titington, which asked the U.S. Supreme Court to review whether the Equal Protection and Due Process Clauses of the U.S. Constitution required Titington's sentence to be adjusted downward to account for the 52 months he had already served on discharged state sentences. *See* Petition for Writ of Certiorari, *Titington v. United States*, No. 21-5985. The Supreme Court denied the petition on November 15, 2021. *Titington v. United States*, 142 S. Ct. 520 (2021). Titington filed the instant § 2255 motion just shy of one year later, on November 14, 2022. (Doc. No. 1, 2255 Motion, PageID #13 (certifying that § 2255 motion was placed in the prison mailing system on November 14, 2022)). This Court subsequently appointed counsel and directed counsel to file an amended petition on behalf of Titington. (Doc. No. 4, Order Appointing Counsel). Appointed counsel filed an Amended § 2255 Motion on April 10, 2023. (Doc. No. 15, Amended 2255 Motion).

## II. APPLICABLE LAW

A prisoner in custody under a sentence of a federal court may move the court to vacate, set aside, or correct his sentence on certain grounds, including that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). It is well established that "[t]o prevail under § 2255, a defendant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or jury's verdict," or "must show a fundamental defect in his sentencing which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999) (internal quotation marks omitted).

When a petitioner challenges his conviction and sentence on the basis of ineffective assistance of counsel, he bears the burden of showing both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984).

On the first prong, "the proper standard for attorney performance is that of reasonably effective assistance," and an attorney's performance should not be deemed deficient unless the defendant shows "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. This standard is "highly deferential," and "courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Moreover, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "It will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the identified acts or omissions overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986).

On the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In § 2255 proceedings, it is the petitioner's burden to show his entitlement to relief. *See Potter v. United States*, 887 F.3d 785, 787–88 (6th Cir. 2018). This requires him to "set forth facts"; mere "[c]onclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). Indeed, when a "petitioner's claims are stated in the form of conclusions without any

allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof," his motion is "legally insufficient to sustain a review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam); *see also Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017) ("Bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the government to respond to discovery or to require an evidentiary hearing.").

## III. ARGUMENT

In his § 2255 motion, Titington attacks his convictions and sentence on three grounds. In Ground One, he argues that trial counsel was constitutionally ineffective because "counsel failed to object to the district court's utilization of the trial jury's verdict and ensuing drug-weight determination alone without making adequate factual findings on the record during sentencing as to why it was relying thereon." (Doc No. 1, 2255 Motion, PageID #4). In Ground Two, he argues that trial counsel was also ineffective in that counsel should have objected to the imposition of "the U.S.S.G. § 2E1.2 enhancement used during petitioner's sentencing," on the ground that "no jury determination was clearly made as to 18 U.S.C. § 1952 (travel in interstate commerce)." (*Id.* at PageID #5). Finally, in Ground Three, he argues that trial counsel was ineffective for the additional reason that counsel "fail[ed] to object to the erroneous jury instruction, which constructively [amended] the indictments on §§ 1962(d) and 846." (*Id.* at PageID #7).

For the reasons that follow, each of these grounds is meritless and the Court should deny the petition and dismiss this case.

### *Ground One: Failure to Object to Use of the Drug Weights Found in the Jury's Special Verdict to Calculate the Guidelines Offense Level*

Titington's first argument is that his trial counsel, Mr. Hopkins, was ineffective in that Mr. Hopkins purportedly failed to object at sentencing to the use of the drug quantities found in the special verdict form—that is, five kilograms of powder cocaine and 280 grams of crack cocaine—

14

to determine the drug quantities for which Titington was accountable under the guidelines. In his

*pro se* motion, Titington is clear that this claim is directed at his *trial counsel*:

> During petitioner's sentencing hearing, his 18 U.S.C. § 1962(d) offense was calculated per the dictates of U.S.S.G. § 2E1.1 . . . . Competent counsel would have apprised the district court of its omission of factual findings pertaining to drug types and quantities in relation to Count One . . . . Petitioner's counsel was constitutionally ineffective for electing not to object to the district court's failure to apply the reasonable foreseeability analysis of U.S.S.G. § 1B1.3(a)(1)(B). Instead, counsel remained mute on this fundamental point as the jury's special verdict findings were erroneously transmuted from criminal liability into sentencing accountability.

(Doc. No. 2, *Pro Se* Memorandum of Law, PageID #22–24).

The supplemental motion filed by appointed counsel is likewise clear that this claim of

ineffective assistance is aimed at Titington's *trial counsel*, Mr. Hopkins: "Trial counsel provided

ineffective assistance of counsel because . . . he failed to object to the application of the special

verdict at sentencing, on the basis that it did not reflect sentencing accountability." (Doc. No. 15,

Amended 2255 Motion, PageID #67; *see also id.* at PageID #63 ("The Petitioner asserts that his

trial counsel failed to object to an erroneous Drug Quantity Jury Instruction and as a result, the

Petitioner . . . did not receive a sentence based upon his personal accountability.")).

The problem with this claim is that it is flatly contradicted by the record: Mr. Hopkins *did*

raise the special verdict objection at sentencing, and he raised it repeatedly. As discussed above in

the "Background" section of this brief, Mr. Hopkins raised this precise objection in Titington's

written PSR position. (Crim Doc. No. 1546, PageID #13664; *see also supra* at 7–8). In addition,

this very issue was raised orally at the omnibus guidelines calculation hearing both by counsel for

other defendants and by Mr. Hopkins. (Crim. Doc. No. 1679, Tr. of Nov. 26, 2019 Hr'g, PageID

#21517–18, 21545–49, 21583–87; *see also supra* at 8). And finally, this same argument came up

yet again at Titington's individual sentencing hearing. (Crim. Doc. No. 1675, Tr. of Titington Sentencing Hr'g, PageID #21243; *see also supra* at 9).

In short, the record clearly shows that Mr. Hopkins did, in fact, make the precise argument that Titington now contends he should have made—and he made it multiple times. Accordingly, Titington's first claim lacks merit and should be denied.

It is true that Titington's co-defendant, Elance Lucas, raised a special verdict argument on direct appeal to the Sixth Circuit, and that the Sixth Circuit agreed with Lucas, concluding that "the jury's special verdict on count one implies only criminal liability, not sentencing accountability," and so "without a finding by the district court that at least five kilograms of cocaine and at least 280 grams of crack cocaine were within the scope of Mr. Lucas's agreement on count one, assigning a base offense level of 30 for that count was error." *Lucas*, 2021 WL 4099241, at *12. The Sixth Circuit accordingly vacated Lucas's 240-month sentence and remanded for resentencing. *Id.* at *4, 30. On remand, this Court resentenced Lucas to 235 months' imprisonment—just five months less than his original sentence. (Crim. Doc. No. 2222, Lucas Resentencing Judgment, PageID #28917).

Unlike Lucas, Titington did not raise this argument on direct appeal. Instead, as discussed above, Titington's appellate counsel, Mr. Tableman, submitted a 37-page appellate brief that raised five other arguments aimed at achieving a larger reduction in Titington's 270-month sentence.

Here, Titington does not assert (in either his original or his amended § 2255 Motion) a claim for ineffective assistance of *appellate* counsel (as opposed to *trial* counsel). Accordingly, even if Titington were now to assert such a claim in his reply brief, it has been forfeited and the Court need not address it. *Laughlin v. United States*, 2020 WL 9423256, at *2 (6th Cir. Oct. 28, 2020) (holding that a § 2255 petitioner's claim raised for the first time in a reply to a response

16

before the district court was forfeited); *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived."); *United States v. Owens*, 2022 WL 2188523, at *6 (E.D. Ky. June 17, 2022) ("[B]ecause Ms. Owens did not raise the issue in her section 2255 motion, it is deemed waived." (brackets, ellipsis, and citation omitted)); *United States v. Santoriello*, 2021 WL 3549907, at *7 (N.D. Fla. July 8, 2021) ("Because Defendant did not raise the issue of ineffective assistance of appellate counsel in his section 2255 motion, the issue is deemed waived."); *see also* Rule 2(b)(1) of the Rules Governing Section 2255 Proceedings (requiring that a § 2255 petition must "specify all the grounds for relief available to the petitioner").[7]

But even if the Court were to find that Titington has not forfeited a claim for ineffective assistance of appellate counsel, any such claim would still fail on the merits because, as will be explained below, Titington cannot show that the special jury verdict issue was *clearly stronger* than the arguments Mr. Tableman elected to raise on appeal.

"[I]t is difficult to demonstrate that an appellate attorney has violated the performance prong [of *Strickland*] where the attorney presents one argument on appeal rather than another." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (citing *Smith v. Robbins*, 528 U.S. 259, 289 (2000)). To prevail on such a claim, the petitioner "must demonstrate that the issue not presented 'was ***clearly stronger*** than issues that counsel did present.'" *Harper v. United States*, 792 F. App'x 385, 390–91 (6th Cir. 2019) (emphasis added) (quoting *Caver*, 349 F.3d at 348 (in turn quoting

---

[7] Although the doctrines of forfeiture and waiver are often invoked interchangeably, Titington's failure to raise a claim of ineffective assistance of appellate counsel in this case is more accurately characterized as forfeiture. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

*Smith*, 528 U.S. at 289)). This is because "*Strickland*'s performance standard does not require an attorney to raise every non-frivolous issue on appeal." *Id.* at 390 (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).[8] To the contrary, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751); *see also Jones*, 463 U.S. at 753 ("A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular,' . . . —in a verbal mound made up of strong and weak contentions.").

Titington has not shown—and cannot show—that the special verdict issue was "clearly stronger" than the issues that Mr. Tableman raised on direct appeal. This is because Mr. Tableman had every reason to believe that success on the special verdict issue would merely result in Titington receiving the exact same sentence—or perhaps even a greater sentence[9]—on remand. By contrast, the arguments that Mr. Tableman actually raised on appeal were aimed at achieving substantial reductions in Titington's sentence.

The Sixth Circuit's decision in *Minor v. Wilson*, 213 F. App'x 450 (2007), is instructive on this point. There, the defendant had been convicted of three offenses at trial and received sentences

---

[8] Claims of ineffective assistance of appellate counsel are evaluated under the *Strickland* standard. *Smith*, 528 U.S. at 285.

[9] As Judge Boggs noted at the Sixth Circuit oral argument, a resentencing in which the Government introduced evidence showing the scope of the individual defendant's agreement "might be favorable" to the defendant "or might not be favorable" to the defendant, depending on what additional evidence the Government might adduce. Oral Argument at 1:50–3:51, *United States v. Lucas*, 2021 WL 4099241 (6th Cir. Sept. 9, 2021) (Nos. 19-6390, 19-6392, 19-6393, 19-6394). Judge Boggs's point was illustrated when, on remand in Lucas's case, the United States in fact presented new evidence at Lucas's resentencing from co-defendant Brandon Hardison's trial, which had been conducted after the Sixth Circuit's decision in *Lucas*. (*See* Crim. Doc. No. 2142, Memorandum in Aid of Sentencing, PageID #28025–28).

of (1) twenty years to life for aiding and abetting aggravated murder, (2) ten years to life for aiding and abetting aggravated robbery, and (3) three years because a firearm was used in the commission of the crimes. *Id.* at 451. The trial court imposed these sentences on the defendant *consecutively* (as opposed to concurrently), so that he was subject to a total prison term of thirty-three years to life. *Id.* On direct appeal, appellate counsel did not argue that the trial court erred in imposing the sentences consecutively, even though Ohio law creates a presumption that all offenders receive *concurrent* sentences, and that presumption can be overcome only by certain judicial factfinding that was not done in the defendant's case. *Id.* at 453–54. Instead of arguing this issue on appeal, appellate counsel elected to challenge the admission of incriminating evidence, the sufficiency of the evidence to sustain the defendant's convictions, and the effectiveness of trial counsel for failing to make various evidentiary objections. *Id.* at 455.

On these facts, the Sixth Circuit rejected the defendant's claim of ineffective assistance of appellate counsel.[10] Even though the Sixth Circuit concluded that the trial court's imposition of consecutive sentences without the required factfinding violated Ohio law, *id.* at 454, the Sixth Circuit still could not conclude that the consecutive sentencing issue was "clearly stronger" than the issues appellate counsel elected to raise on direct appeal. *Id.* at 455. Because the issues that appellate counsel raised all "substantively attacked the legitimacy of [the defendant's] underlying convictions," success on any of those issues "would have resulted in the appellate court vacating [the defendant's] conviction and a retrial." *Id.* Success on the consecutive sentencing issue, by contrast, would have resulted only in a remand for resentencing where "appellate counsel could reasonably have believed that [the defendant] would have received the exact same sentence." *Id.*

---

[10] The Sixth Circuit reviewed the ineffective assistance claim *de novo* and not under the highly deferential standard of the Antiterrorism and Effective Death Penalty Act. *Minor*, 213 F. App'x at 452.

Here, as in *Minor*, it was reasonable for Mr. Tableman to conclude that, even if he raised and prevailed on the special verdict issue on direct appeal, Titington would still "have received the exact same sentence on remand." *See id.* As previously noted, this Court said as much at the end of Titington's sentencing hearing:

> [T]he Court would add this further caveat, which is allowed by Sixth Circuit precedent, as I read it, that if for some reason my guideline calculation is wrong, then the Court would have imposed the same sentence, applying the 18 U.S.C., Section [] 3553(a) factors. This would be a sentence considering the factors as a whole.

(Crim. Doc. No. 1675, Tr. of Titington Sentencing Hr'g, PageID #21281).

Given this Court's express statement at sentencing that Titington would have received the same sentence even if the guidelines were calculated differently, it was entirely reasonable for Mr. Tableman to eschew an attack on the guidelines calculation via the special verdict issue, and to instead attempt to substantively attack Titington's convictions.[11] The arguments raised in Mr. Tableman's appellate brief for Titington were aimed at achieving large reductions in his 270-month sentence. For example, the first argument—a sufficiency-of-the-evidence challenge to the § 841 and 924(c) convictions—was aimed at obtaining a judgment of acquittal on the § 924(c) count, which would have reduced Titington's overall sentence by 60 months. The second and third arguments in the appellate brief similarly aimed to wipe out both of the conspiracy counts (Counts One and Two). And the fourth and fifth arguments were aimed at reducing Titington's sentence by the 52 months he had previously served on a discharged state sentence. In short, the five

---

[11] It is true that the Sixth Circuit declined to rely on this Court's similar statement at Lucas's original sentencing for purposes of harmless error analysis in Lucas's appeal. *See Lucas*, 2021 WL 4099241, at *13. But that does not affect the salient point here: that Mr. Tableman, at the time he was formulating his appellate strategy, acted reasonably in taking this Court's statement at face value and thereby concluding that a challenge to Titington's guidelines calculations would not impact Titington's sentence, even if successful.

20

arguments that Mr. Tableman selected for inclusion in his appellate brief were calculated to have a larger practical effect on Titington's sentence than the issue regarding the jury's special verdict. Mr. Tableman's arguments "[went] for the jugular," *Jones*, 463 U.S. at 753 (citation omitted), rather than seeking to inflict a paper cut.

The reasonableness of Mr. Tableman's strategy is borne out by the actual experience of Titington's co-defendant, Lucas. Even though Lucas raised and prevailed on the special verdict issue in his direct appeal, the result was only a resentencing proceeding in which his original 240-month sentence was reduced by just five months to 235 months' imprisonment. (Crim Doc. No. 2222, Lucas Resentencing Judgment, PageID #28917).[12]

In short, the special verdict issue was not "clearly stronger" than the issues Mr. Tableman actually raised, *see Minor*, 213 F. App'x at 455, and Mr. Tableman acted well within his "reasonable professional judgment," *Strickland*, 466 U.S. at 690, in concluding that a victory on

---

[12] That Lucas prevailed on the special verdict issue on his direct appeal is of no consequence to this motion. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Harper*, 792 F. App'x at 391 (quoting *Strickland*, 466 U.S. at 689). For this reason, the Sixth Circuit has consistently dismissed claims of ineffective assistance of appellate counsel where one defendant, in hindsight, points to a co-defendant's success on a particular appellate issue as proof that his own counsel was ineffective in failing to raise that issue. *See id.* at 390–91 (defendant's appellate counsel was not ineffective in failing to raise argument on direct appeal based on *Dean v. United States*, 581 U.S. 62 (2017), notwithstanding that two co-defendants did raise this issue and ultimately "received significantly reduced sentences"); *Nichols v. United States*, 563 F.3d 240, 252 n.8 (6th Cir. 2009) (en banc) (rejecting defendant's argument that, because his co-defendant was successful on a particular argument on appeal, the defendant "necessarily would have been successful on his direct appeal as well" had appellate counsel raised that issue, because "[s]uch an approach would improperly turn on the type of hindsight discouraged by *Strickland*" (quoting *Range v. United States*, 25 F.3d 1049 (table), 1994 WL 252643, at *4 (6th Cir. June 9, 1994))).

21

the issue would not ultimately affect Titington's sentence. A claim of ineffective assistance of appellate counsel would therefore fail, even if Titington had raised one.[13]

### Ground Two: Failure to Object to Application of the U.S.S.G. § 2E1.2 Enhancement

Titington next claims that his trial counsel, Mr. Hopkins, was ineffective for "fail[ing] to object to the erroneous enhancement under U.S.S.G. § 2E1.2." (Doc. No. 2, *Pro Se* Memorandum of Law, PageID #27). Titington argues that the jury did not return "a verdict upon the indicted 18 U.S.C. § 1952 (Travel in Interstate Commerce) offense," and that Mr. Hopkins was ineffective because he did not ask the Court "to explain on the record its reason for imposing" an enhancement under U.S.S.G. § 2E1.2. (*Id.*). In the Amended § 2255 Motion, Titington's postconviction counsel does not address this ground, and so Titington "relies on his pro se motion" for purposes of this claim. (Doc. No. 15, Amended 2255 Motion, PageID #60).

Section 2E1.2 of the Sentencing Guidelines provides the means of calculating a defendant's offense level following a conviction under 18 U.S.C. § 1952. *See Hisle v. United States*, 2016 WL 11481749, at *5 (W.D. Ky. Aug. 18, 2016) ("sentencing guideline § 2E1.2 applies only to violations of 18 USC § 1952 prohibiting interstate travel in aid of a racketeering enterprise"). Known colloquially as the "Travel Act," § 1952 requires the Government to prove "that the

---

[13] Titington's Amended § 2255 Motion alternatively frames this issue in terms of the jury instructions purportedly misstating the law. Framed this way, the argument appears to be that the jury instructions were erroneous because they did not incorporate all of the elements required for sentencing accountability under U.S.S.G. § 1B1.3. (*See* Doc. No. 15, Amended 2255 Motion, PageID #65–67 (arguing that the jury instructions on drug quantity "did not inform the jury on the law" because they did not include all of the components required for sentencing accountability under U.S.S.G. § 1B1.3). This argument is clearly wrong. The jury need not find all of the elements required by U.S.S.G § 1B1.3 in order to find the defendant criminally liable. Rather, it is only at sentencing that *the district court* must find the things required by § 1B1.3 to determine the defendant's sentencing accountability under the guidelines. *See United States v. McReynolds*, — F. 4th—, 2023 WL 3735472, at *3 (6th Cir. 2023) (stating that "a district court must make two particularized findings" to hold a defendant accountable for the acts of others under § 1B1.3).

22

defendant traveled interstate with the intent of carrying on [] an unlawful activity and that the defendant committed a subsequent act in furtherance of the conspiracy." *United States v. Potts*, 173 F.3d 430 (Table), 1999 WL 96756, at \*10 (6th Cir. Feb. 2, 1999).

Titington was not charged with a violation of the Travel Act. In fact, the Third Superseding Indictment does not charge any defendant in this case with violating § 1952. (*See* Doc. No. 831, Third Superseding Indictment). Nor was U.S.S.G. § 2E1.2 applied at Titington's sentencing. Accordingly, this ground lacks merit and should be denied.

### *Ground Three: Failure to Object to Sixth Circuit Pattern Jury Instruction*

Finally, Titington claims that Mr. Hopkins was ineffective for failing to object to the following portion of one of the jury instructions given in this case:

> [P]roof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government also proved that he was a member of either conspiracy charged in the indictment.

(Doc. No. 2, *Pro Se* Memorandum of Law, Exhibit 1 at PageID #40; *id.* at PageID #32). This instruction quotes nearly verbatim from Sixth Circuit Pattern Criminal Jury Instruction 3.08, entitled "Multiple Conspiracies—Material Variance from the Indictment." Titington argues that, under this pattern instruction, "the jury may very well have convicted the petitioner of being involved with an enterprise or 'some other conspiracy' . . . other than the one(s) levied in the grand jury indictment on Counts One and Two." (Doc. No. 2, *Pro Se* Memorandum of Law, PageID #34). Accordingly, Titington argues that Mr. Hopkins was constitutionally ineffective for failing to object to this pattern jury instruction. Once again, the Amended § 2255 Motion does not address this ground, meaning that Titington "relies on his pro se motion" for this claim. (Doc. No. 15, Amended 2255 Motion, PageID #60).

Titington's concern is wholly unfounded. The instruction at issue states that the Government must "prov[e] that [the defendant] was a member of either conspiracy charged in the indictment." (Doc. No. 2, *Pro Se* Memorandum of Law, Exhibit 1 at PageID #40). The instruction thus expressly *prohibited* the jury from convicting Titington on the basis of a conspiracy that was not charged in the Third Superseding Indictment. Moreover, the Sixth Circuit has approved of this pattern jury instruction. *United States v. Blackwell*, 459 F.3d 739, 765 (6th Cir. 2009). Accordingly, Mr. Hopkins did not render constitutionally ineffective assistance of counsel in declining to object to this pattern jury instruction.

## IV. CONCLUSION

For the reasons set forth above, Titington's petition for relief under § 2255 should be denied, and this case should be dismissed. In addition, because he has failed to make a substantial showing of the denial of a constitutional right, any request for a certificate of appealability should be denied.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney for the
Middle District of Tennessee


*s/ Nicholas J. Goldin*
Nicholas J. Goldin
Assistant United States Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Telephone: (615) 736-5151

24

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was sent on June 23, 2023, via the Court's electronic filing system, to counsel for the petitioner.

*s/ Nicholas J. Goldin*
Assistant United States Attorney