# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **DECARLOS TITINGTON** | ) | |
| | ) | |
| v. | ) | No. 3:22-cv-955 |
| | ) | (Crim. No. No. 3:17-cr-00124-7) |
| **UNITED STATES OF AMERICA** | ) | |

## MEMORANDUM OPINION

Pending before the Court is Decarlos Titington's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1). That motion, which has been amended by counsel (Doc. No. 15), is fully briefed (Doc. Nos. 18, 19) and will be denied.

## I. Background

After a two-month trial, a jury returned guilty verdicts on the majority of counts contained in the Third Superseding Indictment against Titington and four other members of the Clarksville chapter of the Gangster Disciples. By virtue of its guilty verdicts on Count One, the jury found the Gangster Disciples to be a criminal organization for purposes of the Racketeer Influence Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a). In addition to being found to be part of that RICO conspiracy, Titington was found to be a part of the drug conspiracy alleged in Count 2, as well as being a felon in possession of a firearm (Count 34); possessing a firearm in furtherance of a drug trafficking offense (Count 42); possessing a firearm and ammunition as a previously convicted felon (Count 41); and possessing with intent to distribute cocaine (Count 40).

Titington's Motion for Judgment of Acquittal (Crim. Doc. No. 1388) was denied by the Court (Crim. Doc. No. 1461), and a presentence report ("PSR") was prepared. The PSR calculated Titington's Offense Level to be 36 and his Criminal History to be VI, suggesting an advisory Guidelines range of from 324 to 406 months imprisonment on Counts 1, 2, 34, 40, and 41, plus an

additional consecutive 5-year sentence on Count 42. After an omnibus hearing involving three of the trial Defendants (Crim. Doc. No. 1574) and considering Titington's objections at his own sentencing hearing (Crim. Doc. No. 1675), the Court reduced Titington's offense level to 30. This reduction made the advisory Guidelines range to be from 168 to 210 months on all counts, except for the mandatory consecutive sentence required by the conviciton on Count 42.

After resolving several objections lodged by Titington and the Government, the Court imposed a top-end of the Guidelines sentence of 210 months each on Counts 1, 2, and 40; 120 months each on counts 34 and 41, with all those counts to be served concurrently; and 60 months consecutive on Count 42, resulting in an effective sentence of 270 months. Both Titington's conviction and sentence were affirmed on appeal. United States v. Lucas, No. 19-6390, 2021 WL 4099241 (6th Cir. Sept. 9, 2021).

## I. Discussion

Titington raises three grounds for relief, all alleging ineffective assistance of counsel.[1] In his amended motion, Titington argues that "[t]he underlying facts leading to [his] conviction in this case are unimportant to [his] § 2255 Motion." (Doc. No. 15 at 1). For the most part, the Court agrees and turns directly to the substantive arguments raised by Titington after a brief recitation of the standard of review.

**A. Standard of Review**

Section 2255 provides that a federal prisoner who claims that his sentence was imposed in violation of the Constitution may (among other things) "move the court which imposed the sentence

---

[1] At trial, Titington was represented by CJA Panel Attorney David T. Hopkins. On appeal he was represented by Kenneth P. Tableman.

to vacate, set aside or correct the sentence." To obtain relief under § 2255, the petitioner must demonstrate constitutional error that had a "substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005) (citing Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003)).[2]

A criminal defendant is guaranteed the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686–87 (1984). "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

"Defendants claiming ineffective assistance must establish two things. First, that the attorney's performance fell below 'prevailing professional norms.' And second, that the attorney's poor performance prejudiced the defendant's case." Monea v. United States, 914 F.3d 414, 419 (6th Cir. 2019) (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)). "Proving prejudice is not easy" because the petitioner is confronted with the "high burden" of demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citing Davis v. Lafler, 658 F.3d 525, 536 (6th Cir. 2011)).

Finally, while amended pleadings generally supersede original pleadings, and "[t]hat rule applies in [habeas] cases as well, Calhoun v. Bergh, 769 F.3d 409, 410 (6th Cir.2014), the Sixth Circuit has "recognized exceptions to this rule where a party evinces an intent for the amended

---

[2] Generally, a hearing is required if a factual dispute exists, unless the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013) (citation omitted). Additionally, no hearing is required where "the record conclusively shows that the petitioner is entitled to no relief." Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Here, counsel does not request a hearing, nor does the Court find one to be necessary given the lack of a factual dispute underlying Titington's claims.

3

pleading to supplement rather than supersede the original pleading . . . and where a party is forced to amend a pleading by court order." Braden v. United States, 817 F.3d 926, 930 (6th Cir. 2016). Here, the intent is clear. Counsel states: that "[t]his amended motion in no way supersedes or otherwise negates the claims raised in the pro se petition." (Doc. No. 15 at 10). Accordingly, the Court considers both Titington's *pro se* motion and his amended motion in analyzing his claims.

**B. Claim One – Improper Use of Jury's Drug Quantity Findings**

In his *pro se* filing, Titington first argues that trial counsel was constitutionally ineffective because he "failed to object to the district court's utilization of the trial jury's verdict and ensuing drug-weight determination alone without making adequate factual findings on the record during sentencing as to why it was relying thereon." (Doc No. 1 at 4). That same argument is advanced in the amended motion, along with the argument that trial counsel was ineffective by failing to object to "the Drug Quantity Jury Instruction [and] fail[ing] to instruct the jury on how to determine the total drug quantity attributable to each defendant, respectively, pursuant to the applicable law." (Doc. No. 15 at 7). Counsel goes on to observe that a court cannot "'simply sentence a defendant according to the amount of narcotics involved in the conspiracy.'" (Id. at 5) (quoting United States v. Okafor, 966 F.2d 116, 120-21 (6th Cir. 1993)).

These arguments fail at the outset. Mr. Hopkins objected not once, but repeatedly to the use of the jury's finding as a basis for Titington's drug calculation. For example, in Titington's Sentencing Memorandum, Mr. Hopkins wrote:

> The scope of the criminal activity jointly undertaken by the defendant ("the jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3(a)(1), commentary, applic. note 2. "[I]n order to hold a defendant accountable for the acts of others [under U.S.S.G. §

4

> 1B1.3(a)(1)(B)], a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." United States v. Campbell, 279 F.3d 392, 399-400 (6th Cir. 2002). The Commentary further instructs that "[i]n order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendants agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." U.S.S.G. § 1B1.3(a)(1), commentary, applic. note 2. "In order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. The fact that the defendant is aware of the scope of the overall operation is not enough to satisfy the first prong of the test and therefore, is not enough to hold him accountable for the activities of the whole operation." Campbell, 279 F.3d at 400.

(Crim. Doc. No. 1546 at 4-5). Even before then, Mr. Hopkins raised the issue in his objection to the PSR. Furthermore, the use of the special verdict was also discussed at length at the omnibus hearing when Mr. Hopkins again raised his objection, and adopted the arguments of co-counsel. The arguments raised now are the exact arguments that Titington claims Mr. Hopkins was ineffective in failing to make. Claim One fails on this basis alone.

When the Government in its response brief pointed out that Mr. Hopkins had, in fact, objected, Titington changed course and asserted that the claim should have been directed at appellate counsel, Mr. Tableman. However, claims raised for the first time in a reply brief are generally forfeited. Hardin v. United States, 595 F. App'x 460, 462 (6th Cir. 2014); United States v. Crozier, 259 F.3d 503, 517 (6th Cir. 2001). Claim One fails on this basis as well. And, even if the Court were to excuse the waiver, Titington's claim as to Mr. Tableman fails.

As with any ineffectiveness claim, petitioner must show that appellate counsel's actions fell "'outside the wide range of professional competent assistance." Hand v. Houk, 871 F.3d 390, 412 (6th Cir. 2017) (quoting Strickland, 466 U.S. at 690). "[A]ppellate counsel who files a merits brief

5

need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). Indeed, "'winnowing out weaker arguments on appeal'" is "the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-752 (1983)); see also, Fautenberry v. Mitchell, 515 F.3d 614, 642 (6th Cir. 2008) ("There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.").

Even though "it is difficult to demonstrate that counsel was incompetent" on appeal, "it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim." Id. A petitioner may do so by showing "that his appellate counsel's performance was objectively unreasonable [because] the unraised claim was 'clearly stronger than those presented.'" Hand, 871 F.3d at 416 (citing Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002)).

In Titington's appellate brief, Mr. Tableman raised the following issues:

I. Is possession of 7.66 grams of cocaine in a bag and possession of a gun in a car sufficient to support a conviction for possession with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime? (Count Forty and Forty-Two).

II. Without proof that Titington was involved with five kilograms or more of cocaine and 280 grams or more of crack cocaine was there sufficient evidence to support Titington's conviction for conspiracy to distribute five kilograms or more of cocaine and 280 grams or more of crack cocaine? (Count Two).

III. Did the District Court plainly err when it told the jury that it did not have to find that Titington knew what quantity of drugs the crime involved? (Count Two).

IV. Did the District Court recognize that it had discretion to adjust Titington's sentence for 52 months served on discharged sentences and does the unequal treatment of discharged and undischarged sentences violate the Constitution?

(Doc. No. 18-1 at 1-2). Even though none of these arguments were successful, the Court cannot conclude that any were any less meritorious than the one Titington claims Mr. Tableman should have raised.

Titington, as was his burden, has not demonstrated otherwise. True, counsel for Elance Lucas raised substantially the same argument on appeal and ultimately netted a 5-month reduction in Lucas' sentence. This was hardly a foreordained conclusion, however, and came with a risk. Lucas's sentence on remand could arguably have been higher than that originally imposed because the Sixth Circuit provided that, "[a]t the new sentencing hearing, the government may introduce evidence about the scope of Mr. Lucas's individual agreement in the RICO conspiracy[.]" United States v. Lucas, 2021 WL 4099241, at *13. The Government did so in the form of evidence from the United States v. Hardison case that had been severed from the trial of the other Gangster Disciples. In response, Lucas argued that "[t]his Court correctly calculated the drug quantity Mr. Lucas was responsible for as 97.175 grams," (Crim. Doc. No. 2180 at 2), suggesting that the win at the appellate court was not the one expected and, in this sense, may have been little more than a hollow victory.

Furthermore, at the conclusion of Titington's sentencing hearing, this Court added a "caveat, which is allowed by Sixth Circuit precedent, as I read it, that if for some reason my guidelines calculation is wrong, then the Court would have imposed the same sentence, applying the 18 U.S.C. Section 3553(a) factors. This would be a sentence considering those factors as a whole." (Crim. Doc. No. 1595-1 at 4-5).

In the past, the Sixth Circuit has "counted [such a] pledge as a point in favor of harmless error," United States v. Montgomery, 969 F.3d 582, 583 (6th Cir. 2020) (collecting cases), at least

in cases when the pledge is not boilerplate or mere pablum. True, the Sixth Circuit failed to find harmless error in Lucas because similar language used at his sentencing was a "bare statement," Lucas, 2021 WL 4099241, at *14, but there is no way Mr. Tableman could have known when he was winnowing the issues for appeal that would be the Sixth Circuit's conclusion.

Hindsight is a wonderful thing because it provides 20/20 vision. Recall, however, that to prevail on an ineffective assistance claims, a petitioner must show that he was not afforded "reasonably effective assistance" as measured by "prevailing professional norms." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quotation marks and internal citations omitted). "Appellate counsel must be competent, not clairvoyant." Moore v. Mitchell, 708 F.3d 760, 793 (6th Cir. 2013).

In a related argument Titington, in his amended petition, argues that Mr. Hopkins was ineffective because he failed to object to this Court's "Drug Quantity Jury Instruction." (Doc. No. 15 at 4). He argues that "[d]espite there being three (3) components to 1B.1.3, the Drug Quantity Jury Instruction only instructed the jury to consider whether conduct of other co-conspirators was 'reasonably foreseeable to Petitioner.' However, just because conduct may be reasonably foreseeable, it does not follow that the scope of the conduct was 'within the scope of jointly undertaken criminal activity' and in furtherance of that criminal activity." Id. at 6. He also quotes the text of Section 1B1.3 of the Guidelines.

Titington is correct that a Court's jury instructions must "accurately . . . reflect the law." United States v. Geisen, 612 F.3d 471, 485 (6th Cir. 2010). However, Section 1B1.3 of the Guidelines, by definition, pertains to sentencing and courts long-recognized the distinction between a defendant's sentencing accountability and conspiracy accountability:

As we previously have recognized, an important distinction exists between the

> criminal law standard for convicting a defendant of conspiracy and the Guidelines standard for sentencing a defendant convicted of conspiracy. Under conspiracy law, a defendant may be convicted of conspiracy even though he is unaware of all the conspiracy's unlawful aims, as long as he has knowledge of some of those aims. See United States v. Lanza, 790 F.2d 1015, 1022–23 (2d Cir.), cert. denied, 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986). The Guidelines' approach is narrower than the standard for establishing guilt of the conspiracy offense itself. A defendant convicted of conspiracy may be sentenced for relevant conduct committed by a co-conspirator in furtherance of the conspiracy only if that conduct was reasonably foreseeable by the defendant. See Guidelines § 1B1.3, Application Note 1; United States v. Perrone, 936 F.2d 1403, 1416 (2d Cir.) (footnote omitted), clarified on other grounds, 949 F.2d 36 (2d Cir.1991).

United States v. Swiney, 203 F.3d 397, 404 (6th Cir. 2000) (quoting United States v. Lanni, 970 F.2d 1092, 1093 (2d Cir. 1992)).

Titington also argues that "[i]t appear that the court used [Sixth Circuit] sample jury instruction 14.07 but the commentary there and the case United States v. Swiney, 203 F.3d 397 (6th Cir. 200) recommend that courts follow refers [sic] to the principles as articulated in 1B1.3." (Doc. No. 15 at 5-6). This hardly establishes ineffectiveness for at least two reasons.

First, while "the Sixth Circuit Pattern Jury Instructions are presumptively straightforward," United States v. Frei, 995 F.3d 561, 566 (6th Cir. 2021), they come with an important disclaimer:

> These are suggested instructions only, and should be tailored to fit the facts of each individual case. As the Sixth Circuit has cautioned, although pattern instructions "have their place, they should not be used without careful consideration being given to their applicability to the facts and theories of the specific case being tried." United States v. Wolak, 923 F.2d 1193, 1198 (6th Cir. 1991).

6TH CIR. PATT. CRIM. INST., Intro. Second, and more importantly, while the Note to Sixth Circuit Pattern Instruction § 14.07 mentions Swiney, it does so in an entirely different context that was inapplicable in Titington's case: "District courts should consider using special verdict forms or more specific instructions to make clear to juries the distinction between substantive offenses and the

9

death-or-injury enhancement, and the differing applicability of Pinkerton and Swiney to each." Id. § 14.07, NOTE. Unlike in Swiney, Titington did not face a mandatory 20-year minimum sentence based upon a death that resulted from drugs distributed by the Gangster Disciples.

For all of the above reasons, Claim One fails.

**C. Claim Two – Section 2E1.2 Enhancement**

Next, in his *pro se* filing, Titington assert that "counsel was ineffective for failing to object to the U.S.S.G. 2E1.2 enhancement used during the Petitioner's sentencing." (Doc. No. 1 at 5). He goes on to argue that "counsel should have objected to the imposition of this sentencing enhancement because no jury determination was clearly made as to 18 U.S.C. § 1952 (travel in interstate commerce); nor were any defendant-specific finding made concerning petitioner's own conduct or the reasonable foreseeability of his co-conspirators." (Id.).

Section 2E.1.2 provides the recommended base offense level for violations of the Travel Act codified at 18 U.S.C. § 1952, which prohibits interstate and foreign travel or transportation in aid of racketeering enterprises. United States v. Saccoccia, 58 F.3d 754, 785 (1st Cir. 1995); United States v. Dailey, 24 F.3d 1323, 1329 (11th Cir. 1994). However, Titington was not charged with a violation of the Travel Act, nor was he subjected to an "enhancement" under U.S.S.G. § 2E1.2. Rather, the only enhancements to his advisory Guidelines range were for (1) being a manager or supervisor pursuant to U.S.S.G. § 3B 1.1(b)(1); (2) maintaining a "trap house" for drugs pursuant to U.S.S.G. § 2D1.1(b)(12); and (3) the multiple-count adjustment required by U.S.S.G. § 3D1.4. Perhaps it is for this reason that this argument was not carried over into the amended motion filed by counsel.

Claim Two also fails.

10

**D. Claim Three – Constructive Amendment**

Finally, in his *pro se* petition, Titington argued that counsel was ineffective for failing to object to "the erroneous jury instruction, which constructively [amended] the Indictments on §§ 1962(d) and 846." He argues that "constructive amendments are considered *per se* prejudicial" and that occurred here because the jury was allowed "to weigh evidence & proof of numerous unindicted conspiracies in addition to Count 1 & 2 of the Grand Jury's Indictment." (Id. at 8). He points to the following language from the jury charge:

> Proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government also proved he was a member of either conspiracy charged in the indictment.

(Crim. Doc. No. 1397 at 59). In Titington's view the Indictment was constructively amended because the jury may have convicted him for being involved with another criminal enterprise or "some other conspiracy (drug, RICO, etc) other than the ones levied in the grand jury indictment on Count One and Two." (Doc. No. 2 at 19).

"The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury." United States v. Manning, 142 F.3d 336, 339 (6th Cir. 1998). After an indictment has been returned, its charges may not be broadened except by amendment by the grand jury itself. Stirone v. United States, 361 U.S. 212, 217-18 (1960). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or court after a grand jury has passed upon them." United States v. Cusmano, 659 F.2d 714, 717 (6th Cir. 1981). That is to say, an improper amendment may either be actual (*i.e.* explicitly changed by the prosecutor or the judge) or by "constructive amendment" which occurs when "the terms of the indictment are in effect altered by the presentation

11

of evidence and jury instructions which so modify essential elements of an offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" Manning, 142 F.3d at 339 (quoting United States v. Hathaway, 798 F.2d 902, 910 (6th Cir. 1986)).

For any of a number of reasons, the challenged instruction was not improper and did not constructively amend the Indictment. Consequently, Mr. Hopkins could not be ineffective in failing to object.

For one, the instruction was modeled after Sixth Circuit Pattern Jury Instructions § 3.08, which was approved by the Sixth Circuit in United States v. Blackwell, 459 F.3d 739, 765 (6th Cir. 2006). For another, Titington's argument ignores the fundamental principles that jury instructions are to be read as a whole, United States v. Fisher, 648 F.3d 442, 447 (6th Cir. 2011), and jurors are presumed to follow their instructions, Samia v. United States, 599 U.S. 635, 646 (2023). Immediately before the challenged language, the jury was instructed in relation to the RICO charge that "proof that a defendant was a member of some other conspiracy is not enough to convict" and, with respect to the drug charge that: "Some of the defendants have argued that there were really multiple conspiracies. Proof that a defendant was a member of some other conspiracy is not enough to convict." (Crim. Doc. No. 1397 at 58). This made abundantly clear that the jury's only concern was with the RICO conspiracy alleged in Count 1 and the drug conspiracy alleged in Count 2.

Finally, and not to put too fine a point on it, all the challenged instruction said was that, just because a particular defendant was involved in another conspiracy did not prohibit a finding of guilt on the charged conspiracies. It in no way suggested the opposite, to wit, that membership in another conspiracy established membership in either the drug or RICO conspiracies charged in the

Indictment.

## II. Conclusion

"Judicial scrutiny of counsel's performance must be highly deferential," and a defendant can meet his burden only by showing that his lawyer's errors were so egregious "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-688.  Because Titington has not made that showing with respect to any of the claims he has raised, his Motion to Vacate, Set Aside, or Correct Sentence as supplemented by counsel (Doc. Nos. 1, 15) will be denied. Further, a Certificate of Appealability will not issue because Titington has not (1) "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); or (2) "demonstrate[d] that reasonable jurists would find [this Court's] assessment of the constitutional claims debatable or wrong,'" Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE